UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH DUANE GOODWIN,

|  |  |
|---|---|
| Plaintiff, | CIVIL ACTION NO. 10-CV-11909 |
| vs. | DISTRICT JUDGE STEPHEN J. MURPHY III |
| TARA HAMILTON, MICHIGAN | MAGISTRATE JUDGE MONA K. MAJZOUB |

DEPARTMENT OF CORRECTIONS,
PATRICIA CARUSO, PINE REST
RESIDENTIAL TREATMENT SERVICES,
DOUGLAS CUSHMAN, AND PINE REST
CHRISTIAN MENTAL HEALTH SERVICES,

Defendants,
_____/

### REPORT AND RECOMMENDATION

I.   **RECOMMENDATION:** This Court recommends that the Motion for Summary Judgment filed by Defendants Tara Hamilton, Michigan Department of Corrections, and Patricia Caruso (docket no. 17) be **GRANTED IN PART**, and the Joinder to the Motion for Summary Judgment filed by Defendants Pine Rest Residential Treatment Services, Pine Rest Christian Mental Health Services, and Douglas Cushman (docket no. 24) be **GRANTED IN PART**.

II.   **REPORT:**

These matters come before the Court on the Motion for Summary Judgment filed by Defendants Tara Hamilton, Michigan Department of Corrections ("MDOC"), and Patricia Caruso. (Docket no. 17). On October 12, 2010 Defendants Pine Rest Residential Treatment Services, Pine Rest Christian Mental Health Services, and Douglas Cushman filed a Joinder to the Motion for Summary Judgment along with a supplemental brief and exhibits in support of summary judgment.

1

(Docket no. 24). Plaintiff has filed responses to both the Motion for Summary Judgment and the Joinder to the motion. (Docket nos. 20, 27). All pretrial matters have been referred to the undersigned for action. (Docket no. 19). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). These matters are now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

## A.    Facts and Procedural History

Plaintiff, a Michigan state prisoner currently incarcerated at Parnall Correctional Facility in Jackson, Michigan, filed this *pro se* action claiming that his civil rights were violated while he was enrolled in a residential drug and alcohol treatment program at Pine Rest Residential Treatment Services in Grand Rapids, Michigan. Defendants are the MDOC, MDOC Director Patricia Caruso, parole agent Tara Hamilton, Pine Rest Residential Treatment Services, Pine Rest Christian Mental Health Services, and Pine Rest drug counselor Douglas Cushman. Plaintiff's Complaint alleges that the Defendants violated his First Amendment rights to free exercise of religion, to be free from retaliation for exercising his constitutional rights, to access to the courts, and his rights under the Establishment Clause; his Eighth Amendment right to be free from cruel and unusual punishment; and his Fourteenth Amendment rights to due process and equal protection. (Docket no. 1 at 3). Plaintiff seeks monetary damages, the appointment of a court monitor to evaluate his mental condition following his return to prison, and injunctive relief in the form of reinstatement of parole. He sues the Defendants in their official and individual capacities.

Plaintiff was convicted in 1985 of criminal sexual conduct ("CSC"), armed robbery, and felony firearm and sentenced to twenty to forty years imprisonment. (Docket no. 1, Ex. 5). He was conditionally released on parole on March 4, 2008 and given a twenty-four month parole term. (Docket no. 1, Ex. 5). Thereafter, Plaintiff violated parole by testing positive for drugs and alcohol.

2

At the suggestion of Defendant Hamilton, his parole officer, Plaintiff agreed to enter Pine Rest Residential Treatment Services ("PRRTS") in Grand Rapids, Michigan for residential substance abuse treatment. On October 6, 2009 Plaintiff was transported to the PRRTS by MDOC staff where he was approved for a ninety day stay. It appears from the record that Defendant Pine Rest Christian Mental Health Services ("PRCMHS") facilitates or oversees the operation of the residential treatment program. (Docket no. 24, Ex. 2). Upon arrival at the treatment facility Plaintiff immediately objected to the program and refused to sign admission forms. He alleges that he signed the admission papers under duress only after Defendant Hamilton threatened to have him transported back to prison on parole violation for refusing to comply with treatment. (Docket no. 1 at 8; Docket no. 24, Ex. 2).

During the course of Plaintiff's stay at PRRTS he repeatedly complained about program policies which he believed were unfairly administered against him. Staff at PRRTS regularly conveyed Plaintiff's complaints to his parole officer Defendant Hamilton. (Docket no. 17, Ex. A). Ultimately, it was determined that Plaintiff was not invested in the substance abuse program. On November 12, 2009, Plaintiff was terminated from the treatment program and was transported back to jail. Plaintiff was subsequently served parole violation charges for failure to complete residential substance abuse treatment. (Docket no. 1, Exs. 5-7). Following a preliminary hearing and a parole revocation hearing, Plaintiff was found guilty of the parole violation of failing to complete a substance abuse treatment program and his parole was revoked for twenty-four months.

In the instant Complaint, Plaintiff alleges that while he was admitted to the PRRTS he requested but was denied the opportunity to attend church services of his choice, seek employment outside the facility, be permitted an eight hour pass, and be allowed to go to the federal court house

to file a lawsuit concerning the treatment he was receiving at the facility.  (Docket no. 1 at 8-9).

Plaintiff further alleges that he was forced to attend narcotics anonymous ("NA") and alcoholics

anonymous ("AA) meetings at the facility.  He alleges that he requested documents from Defendant

Cushman, his substance abuse counselor, related to Pine Rest's policies for the purpose of filing a

lawsuit, and claims that within thirty minutes of his request he was arrested, escorted to jail, and

charged with a parole violation.  (Docket no. 1 at 9).  Plaintiff also alleges that Defendant Hamilton

provided false testimony during his November 23, 2009 preliminary parole violation hearing.

(Docket no. 1 at 9).  Finally, Plaintiff claims that his parole was revoked and he was sent back to

prison solely for exercising his constitutional rights.  (Docket no. 1 at 11).

## B.      Governing Law

Defendants move for entry of summary judgment and dismissal of Plaintiff's Complaint

pursuant to Fed.R.Civ.P. 56(b).  Summary judgment is appropriate where the moving party shows

that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence

of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d

912, 915 (6th Cir.2000).  Once the moving party has met its burden of production, the non-moving

party must come forward with significant probative evidence showing that a genuine issue exists for

trial.  *Id.*  In determining whether there are issues of fact for trial, the inferences drawn from the

underlying facts must be viewed in a light most favorable to the party opposing the motion.  *United

States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  A mere scintilla of evidence is insufficient to

defeat a properly supported motion for summary judgment; rather, "there must be evidence on which

the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986).

**C.  Analysis**

**1.  MDOC**

Defendants assert that the MDOC is entitled to Eleventh Amendment immunity with respect to Plaintiff's claims.  The Court agrees.  The Eleventh Amendment bars "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," provided the state has not waived its immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 381 (6th Cir.1993) (citations omitted).  The State of Michigan has not consented to section 1983 civil rights lawsuits filed in federal court. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir.2004) (citation omitted).  Neither has Congress abrogated state sovereign immunity in civil rights actions. *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir.1993).  Consequently, the Defendants' Motion for Summary Judgment (docket no. 17) should be granted with respect to Plaintiff's claims against the MDOC.

**2.  Patricia Caruso**

**a.  Individual Capacity Claims**

Defendant Caruso argues that she is entitled to dismissal of Plaintiff's individual capacity claims against her because Plaintiff has not demonstrated that she was personally involved in the incidents underlying Plaintiff's claims.  Liability under 42 U.S.C. § 1983 cannot be premised solely upon a theory of respondeat superior or vicarious liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).  Instead, Plaintiff must show that Defendant Caruso was personally involved in, or otherwise authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct.

5

*Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989).

Plaintiff has failed to name Defendant Caruso in the body of his Complaint. Furthermore, Plaintiff has not provided evidence to prove that Defendant Caruso was personally involved in, or otherwise authorized, approved, or knowingly acquiesced in the alleged wrongdoing. Accordingly, Plaintiff's individual capacity claims against Defendant Caruso should be dismissed.

       **b.**    **Official Capacity Claims**

Plaintiff has also sued Defendant Caruso in her official capacity. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir.2003) (citations omitted). Thus, "a suit for monetary damages against an individual in his or her official capacity is deemed to be an action against the state." *Johnson v. Unknown Dellatifa,* 357 F.3d at 545 (citation omitted). "[N]either a State nor its officials acting in their official capacities are "persons" under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff has no right to money damages against Defendant Caruso.

In addition to monetary damages, Plaintiff seeks injunctive relief in the form of reinstatement of his parole. (Docket no. 20 at 2). It is widely recognized that a plaintiff can avoid the bar of sovereign immunity by suing for prospective injunctive relief rather than monetary damages. *Johnson v. Unknown Dellatifa,* 357 F.3d at 545 n.1. Plaintiff's claim for injunctive relief against Defendant Caruso is not barred by the Eleventh Amendment. To prevail on a claim for injunctive relief the movant must show that (1) there is a strong likelihood of success on the merits; (2) he will suffer irreparable injury without the injunction; (3) the issuance of the injunction will not cause substantial harm to others; and (4) the public interest will be served by issuance of the injunction. *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir.1989) (citation omitted).

This is not the first request the Plaintiff has made concerning the reinstatement of his parole. On May 12, 2010 Plaintiff filed a Motion for Preliminary Injunction asking for, among other things, relief in the form of an order reinstating his parole.  (Docket no. 3).  In response to that motion, this Court entered a Report and Recommendation recommending that Plaintiff's Motion for Preliminary Injunction be denied, and finding that Plaintiff's request to have the Court overturn the parole board's decision and immediately reinstate him on parole was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Goodwin v. Hamilton*, No. 10-cv-11909, 2010 WL 4341705, at *3 (E.D. Mich. Sept. 29, 2010).  This Court further found that Plaintiff's civil motion was not a proper vehicle for attacking his parole revocation and subsequent incarceration.  *Id*.  The district court adopted the Report and Recommendation and denied Plaintiff's Motion for Preliminary Injunction on October 27, 2010.  *Goodwin v. Hamilton*, No. 10-cv-11909, 2010 WL 4339500 (E.D. Mich. Oct. 27, 2010).

Plaintiff cannot now show that he is entitled to injunctive relief to reinstate his parole.  He has not asked the Court to enjoin any other actions.  Accordingly, Plaintiff's official capacity claims against Defendant Caruso for injunctive relief should be dismissed.

**3.    State Action Against PRRTS, PRCMHS, and Douglas Cushman**

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must plead and prove that a right secured by the Constitution or a federal law has been violated, and that the violation was caused by a person acting under color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted).  A private party may be deemed to be a state actor and thus acting under the color of law if the party's actions are "fairly attributed to the state." *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir.2007) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)); *West v. Atkins*, 487 U.S. at 49.  The Sixth Circuit relies upon the public function test, state compulsion test, and

7

symbiotic relationship or nexus test in determining whether the actions of a private actor amount to state action. *Molnar v. Care House*, 574 F.Supp.2d 772, 783 (E.D. Mich.2008), *aff'd*, 359 Fed.Appx. 623 (6th Cir.2009). Those tests are described in *Molnar* as follows:

> Under the public function test, a private party is deemed to be a state actor if the powers exercised by that party have traditionally been exclusively reserved to the state. *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). The standard used under this test is rigorous, and "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' " *Flagg Brothers Inc. v. [Brooks],* 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The state compulsion test involves determining whether the state has exercised such coercive power, or control over the defendant, that in law, the choice of the private actor is deemed to be that of the state. *Campbell v. PMI Food Equipment Group, Inc.,* 509 F.3d 776, 784 (6th Cir.2007); *Wolotsky v. Huhn, supra* ("More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives."). . . . Finally, under the symbiotic relationship or nexus test, a § 1983 claimant must "demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman v. Higbee Co.,* 319 F.3d 825, 834 (6th Cir.2003).

*Molnar v. Care House*, 574 F.Supp.2d at 783-84. The "receipt of public funds, being a party to a government contract, and government referrals fail[s] to prove that the state controlled or coerced the defendant to act in a certain way." *Id.* at 785 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841-42 (1982)).

"Decisions as to whether a private action may be considered a 'state action' are fact specific and are made on a case-by-case basis." *Id*. at 783. Plaintiff's Complaint alleges that Defendants PRRTS and PRCMHS are under contract with the MDOC to provide substance abuse services to parolees. (Docket no. 1 at 8). Plaintiff has also alleged that Defendant Cushman was a person acting under color of law for purposes of 42 U.S.C. § 1983 during the incidents giving rise to his claims. (Docket no. 1 at 3). Defendants have not offered any argument or evidence to show otherwise. Rather, Defendants Hamilton, the MDOC, and Caruso acknowledge that the Pine Rest

8

Defendants are under contract with the MDOC to provide outpatient services to parolees.  (Docket no. 17 at 6). However, they do not indicate whether the contractual arrangement also encompasses residential services, or describe the scope of the relationship between the MDOC and the Pine Rest Defendants. In addition, without presenting any argument as to whether the Pine Rest Defendants are state actors subject to section 1983 liability, Defendants Hamilton, the MDOC, and Caruso state that Pine Rest's "policies can be attributed to the MDOC."  (Docket no. 17 at 6).  The Pine Rest Defendants adopted this argument in their Joinder to the motion, also without undertaking any assessment as to whether they are state actors under section 1983.  (Docket no. 24 at 2).

The Court is not required to accept as true conclusory legal statements that the Defendants were acting under color of law.  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir.2006).  However, in ruling on a motion for summary judgment, the Court must draw all reasonable inferences in the non-moving party's favor. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).  The Court finds that genuine issues of material fact remain concerning whether these Defendants are in fact state actors for section 1983 purposes.  However, for purposes of this motion, the Court will accept that Defendants PRRTS, PRCMHS, and Douglas Cushman were acting under the color of law as required by 42 U.S.C. § 1983.

**4.      Defendant Cushman**

In order to establish liability under 42 U.S.C. § 1983, Plaintiff must show that Defendant Cushman was personally responsible for the claimed deprivation of his constitutional rights. *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998) (section 1983 liability must be based on active unconstitutional behavior).

In his Complaint Plaintiff alleges that while he was admitted to PRRTS Defendant Cushman

made numerous calls to Plaintiff's parole agent concerning Plaintiff's various requests. (Docket no. 1 at 8). Plaintiff claims that he asked Defendant Cushman for "documents dealing with Pine Rest's criteria for the sole purpose of having the information for the filing of a lawsuit," and that Defendant Cushman had to contact Plaintiff's parole agent about the request. (Docket no. 1 at 9). Plaintiff claims that after the call was made he was informed that he would not be allowed to "gather any forms from Pine Rest nor be allowed to go to federal court." (Docket no. 1 at 9). He further alleges that Defendant Cushman testified at his parole revocation hearing. (Docket no. 1 at 10).

Defendant Cushman is entitled to absolute immunity from suit for testimony he provided in the parole revocation hearing. *See Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir.1999) (witnesses have absolute immunity from suit for all testimony provided in judicial proceedings); *Oakes v. Mayer*, No. 1:05-cv-356, 2005 WL 2810692, at *2 (W.D. Mich. Oct. 27, 2005) (applying the holding in *Spurlock* to parole revocation hearings).

Next, although Plaintiff claims that Defendant Cushman deprived him of access to the courts, Defendant Cushman was under no legal obligation to permit the Plaintiff to leave the treatment facility and personally go to the courthouse to file a lawsuit. Plaintiff has not alleged or offered evidence to demonstrate that Defendant Cushman denied him access to materials such as pen and paper so that he could file a lawsuit by mail. Furthermore, as discussed further below, Plaintiff has not demonstrated that he suffered an actual injury as a result of the alleged denial of access to the courts.

With regard to his other allegations, Plaintiff has failed to allege or show that Defendant Cushman was personally responsible for depriving Plaintiff of his constitutional rights. Instead, Plaintiff alleges that Defendant Cushman contacted his parole agent to discuss Plaintiff's requests.

10

Plaintiff's factual allegations fail to state plausible claims for relief against Defendant Cushman, and Plaintiff has not provided evidence to support his claims against this Defendant. Accordingly, Defendant Cushman is entitled to summary judgment.

**5.      Defendants Hamilton, PRRTS, and PRCMHS**

      **a.      Establishment Clause**

Plaintiff alleges that the Defendants violated the Establishment Clause of the First Amendment by forcing him to participate in narcotics anonymous ("NA") and alcoholics anonymous ("AA") meetings as part of his residential substance abuse treatment program. Defendants have not responded to this argument.

Courts have found that because of the religious overtones of the AA/NA programs, "forcing prisoners and parolees into such programs violates their clearly established constitutional rights" under the Establishment Clause. *Cain v. Caruso*, No. 08-cv-14699, 2009 WL 2475456, at *11 (E.D. Mich. Aug. 11, 2009) (citing cases); *Bausch v. Sumiec*, 139 F.Supp.2d 1029 (E.D. Wis.2001). Claims under section 1983 cannot be based on vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In order to establish section 1983 liability against a private corporation, a plaintiff must show that the corporation maintained a policy, practice, or custom that is the moving force behind the constitutional violation. *See Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir.2004).

Defendants submitted a copy of the Pine Rest Client Handbook in support of their Joinder in the Motion for Summary Judgment. The Handbook provides that clients at the Pine Rest treatment facility are required to attend all in-house AA/NA meetings. (Docket no. 24, Ex. 4 at 13 "AA/NA Meetings"). The Handbook further provides that attendance at all scheduled groups and

11

activities is mandatory unless the client's case manager schedules the client for an alternative activity. (Docket no. 24, Ex. 4 at 13 "Attendance"). The parties have not indicated whether the Defendants were made aware of the fact that the Plaintiff objected to the AA/NA meetings, or whether the Plaintiff sought an alternative activity so that he would not be required to attend the meetings.

Based on the record before the Court, Pine Rest has a policy or practice of requiring mandatory participation in AA/NA meetings. Defendants have not drawn any distinction between PRRTS and PRCMHS, or shown that the Pine Rest Defendants are not responsible for implementing the policies set forth in the Client Handbook. Accordingly, Defendants have failed to show that there are no genuine issues of material fact related to Plaintiff's Establishment Clause claim against PRRTS and PRCMHS.

Next, Plaintiff alleges that it was Defendant Hamilton who suggested that he attend PRRTS, and threatened to have him jailed on a parole violation if he failed to complete the program, inferring that she is liable as well for any violation of the Establishment Clause. Defendants argue that Defendant Hamilton is entitled to quasi-judicial immunity as a parole officer or to qualified immunity.

In section 1983 actions, the doctrine of qualified immunity protects state officials from personal liability when their performance of discretionary functions does not violate clearly established federal rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts have found that a parolee's right under the Establishment Clause to be free from coerced participation in AA/NA programs has been clearly established since 2001. *Hanas v. Inner City Christian Outreach, Inc.*, 542 F.Supp.2d 683, 701 (E.D. Mich. 2008); *Cain v.*

12

*Caruso*, No. 08-cv-14699, 2009 WL 2475456, at *11 (E.D. Mich. Aug. 11, 2009) (citing *Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir.2007)). Accordingly, Defendant Hamilton is not entitled to qualified immunity. *See Inouye v. Kemna*, 504 F.3d at 717 n.16 (declining to decide whether a parole officer would lose qualified immunity by simply allowing or encouraging, rather than requiring, participation in an AA/NA program).

Finally, Defendant Hamilton argues that she is entitled to quasi-judicial immunity as a parole officer when performing duties to ensure that the Plaintiff complied with the terms of his parole. Whether or not Defendant Hamilton is entitled to quasi-judicial immunity as a parole officer under the facts of this case is not clear. Generally, parole officers are entitled to quasi-judicial immunity when they are performing a judicial function. *Balas v. Leishman-Donaldson*, No. 91-4073, 1992 WL 217735, at *5 (6th Cir. Sept. 9, 1992); *Imbler v. Pachtman*, 424 U.S. 409 (1976) (quasi-judicial immunity extends to parole officers to shield them from liability when their actions are judicial in nature). Thus, to the extent Defendant Hamilton was investigating whether the Plaintiff was complying with the conditions of his parole, she was performing a quasi-judicial function. *Balas v. Leishman-Donaldson*, No. 91-4073, 1992 WL 217735, at *5 (6th Cir. Sept. 9, 1992). To the extent Defendant Hamilton was performing that function at the direction of the judge, she is entitled to quasi-judicial immunity. *Id.*

However, it is less clear whether Defendant Hamilton was acting in a quasi-judicial function when she suggested and then allegedly required the Plaintiff to participate in the PRRTS substance abuse program with its mandatory AA/NA component. Defendants have not cited authority to show that Defendant Hamilton is entitled to quasi-judicial immunity under these facts. In *Inouye v. Kemna*, 504 F.3d 705 (9th Cir.2007) and *Bausch v. Sumiec*, 139 F.Supp.2d 1029 (E.D. Wis.2001),

13

the Courts held, without addressing the issue of quasi-judicial immunity, that parole officers were not entitled to summary judgment on plaintiffs' claims that they imposed AA/NA as a parole condition.  Given the lack of precedent for applying quasi-judicial immunity under facts similar to those in the case at bar, the Court cannot conclude with certainty that Defendant Hamilton is entitled to quasi-judicial immunity.  Accordingly, Defendant Hamilton's Motion for Summary Judgment should be denied as it relates to Plaintiff's Establishment Clause claim.

Based on the above, there remain triable issues of fact as to whether PRRTS, PRCMHS, and Defendant Hamilton violated Plaintiff's First Amendment rights under the Establishment Clause.

**b.      Access To The Courts**

Plaintiff alleges that he was not allowed to go to the federal courthouse to file a lawsuit concerning the treatment he was receiving at Defendants' substance abuse treatment facility. (Docket no. 1 at 8-9).  He alleges that he requested documents from Defendant Cushman under the Freedom of Information Act seeking materials related to Pine Rest's "criteria for the sole purpose of having the information for the filing of a lawsuit."  (Docket no. 1 at 9).  Plaintiff claims that he was told that he "would not be allowed to gather any forms from Pine Rest nor be allowed to go to federal court."  (Docket no. 1 at 9).  Plaintiff further alleges that while he was detained in Kent County Jail he was prevented from filing a grievance within five days, and thus was prohibited from filing a timely action upon entering Jackson.  (Docket no. 1 at 6).

Prisoners have a fundamental right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  A prisoner's access to the courts must be adequate, effective and meaningful.  *Id*. at 822.  Adequate, effective, and meaningful access requires that prison officials provide prisoners with adequate law libraries or assistance from individuals trained in the law, or provide indigent prisoners

14

with paper, pen, and stamps so that they may draft and mail legal documents. *Id.* at 824-28. A prisoner asserting a denial of access to courts claim must allege that he suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). To meet this requirement, a plaintiff must show that the actions of the prison official hindered the prisoner's efforts to pursue a legal claim. *Id.* at 351.

Plaintiff's allegation that Defendants deprived him of access to the courts by refusing to allow him to physically go to federal court to file a lawsuit is without merit. Plaintiff has not alleged or shown that the Defendants prevented him from drafting and mailing pleadings while he was admitted to PRRTS. Indeed, the evidence shows that Plaintiff did not request Pine Rest staff to provide him with materials necessary to file a lawsuit by mail. (Docket no. 24, Ex. 3). Furthermore, Plaintiff filed a timely Complaint in this case and thus has not demonstrated that he suffered any actual injury as a result of Defendants' conduct. Finally, with respect to his claim that he was not permitted to file a grievance, Defendants have not argued that Plaintiff failed to file grievances as required under 42 U.S.C. § 1997e. Thus, the Court has reviewed the merits of Plaintiff's claims without consideration of whether Plaintiff filed the requisite grievances. Plaintiff has not demonstrated that his failure to file a grievance caused him to be denied access to the courts. Accordingly, Plaintiff's access to the courts claim should be dismissed.

    **c.**    **Freedom Of Religion**

Plaintiff argues that he was denied the right to attend church services of his choice. (Docket no. 1 at 8). Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). However, institutions are not required to provide a place of worship

15

for every faith regardless of the degree of interest in a particular religion. *Id.*; *Colvin v. Caruso*, 605 F.3d 282, 291-92 (6th Cir.2010).

The record shows that Plaintiff requested permission to leave the facility unescorted to attend religious services. (Docket no. 24, Exs. 1, 3). Plaintiff was informed that he was not eligible to leave the facility unsupervised because he was not in the last two weeks of his treatment, he was a sex offender, and he did not have permission from his parole officer. (Docket no. 24, Ex. 3). Plaintiff was instructed that he must be escorted to religious services. (Docket no. 24, Exs. 1, 3). The record shows that Plaintiff did not ask Pine Rest staff to escort him to a church other than the one at which the facility typically worshiped. (Docket no. 24, Ex. 3). Plaintiff has failed to allege facts or provide evidence to show that he was deprived of a reasonable opportunity to exercise his faith. He also has not established that Defendants' policies which required CSC clients and MDOC prisoners who were not within their last two weeks of treatment to be escorted offsite were not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Accordingly, Plaintiff's free exercise of religion claim should be dismissed.

### d.    Retaliation

Next, Plaintiff alleges that thirty minutes after he requested documents from Defendant Cushman for the purpose of filing a federal lawsuit, Defendant Hamilton sent the MDOC-Absconding Recovery Unit to arrest him and transport him to jail. (Docket no. 1 at 9). Plaintiff was subsequently served with a parole violation charge and, after a parole revocation hearing, his parole was revoked for twenty-four months. Plaintiff alleges that he was retaliated against for seeking to

16

exercise his constitutional rights.

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id*. "[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir.2004) (citation and internal quotation marks omitted).

The Court will accept for purposes of this motion that Plaintiff has met the first two elements of a retaliation claim. *See Carter v. Dolce*, 647 F.Supp.2d 826, 834 (E.D. Mich. 2009) ("[T]here is little difference between retaliating against a person for filing a grievance [or lawsuit], and retaliating for threatening to file one."); *Wicks v. Rubitschun*, No. 2:08-cv-77, 2009 WL 1974395, at *5 (W.D. Mich. July 6, 2009) (assuming that some threats to file grievances and lawsuits may rise to the level of protected conduct). Furthermore, the Plaintiff's protected activity occurred shortly before the Defendants' alleged retaliatory response, giving rise to an inference of retaliation. Hence, Plaintiff has met his burden of establishing the third element of his claim.

"Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . .If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X,* 175 F.3d at 399 (citing *Mt.*

17

*Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)).  The evidence shows that Plaintiff was upset that he was required to remain in the treatment program for ninety days, refused to attend various therapy sessions, arrived late for sessions he did attend, threatened to leave the facility, violated program rules by smoking in the facility, and continually complained about what he perceived were unfair restrictions on his freedom placed on him by the program.  (Docket no. 24, Exs. 1, 3, 11).  The evidence further shows that Defendant Hamilton was repeatedly contacted by the treatment facility via telephone to discuss Plaintiff's complaints and non-compliance with the program.  Furthermore, the record shows that Plaintiff's substance abuse counselor informed Defendant Hamilton that Plaintiff was not invested in the treatment process.  (Docket no. 24, Ex. 1).

Defendants argue and the evidence shows that Plaintiff's parole was not revoked because he threatened to file a lawsuit, but rather because he failed to invest himself in the substance abuse treatment program, and by doing so failed to comply with the conditions of his parole.  Plaintiff has failed to show that there is sufficient evidence on which a jury could reasonably find in his favor on his retaliation claim.  The Defendants are therefore entitled to summary judgment on this claim.

**e.      Cruel and Unusual Punishment**

Plaintiff argues that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment by being forced to participate in religious programming while at the treatment facility, by being denied the right to participate in activities afforded others within the same program, by being treated differently after he objected to the Defendants' alleged unconstitutional conduct, and by being sent back to prison.  (Docket nos. 20, 27).

The Eighth Amendment prohibition against cruel and unusual punishment prohibits

18

punishments which are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  Conditions of confinement are cruel and unusual if they violate contemporary standards of decency in a maturing society.  *Id.* at 346-47.  An Eighth Amendment condition of confinement claim contains both objective and subjective components.  *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  The objective component requires the plaintiff to plead and prove that the conditions result in the serious deprivation of basic human needs, or deprive them of the minimal civilized measure of life's necessities.  *Rhodes v. Chapman*, 452 U.S. at 347.  The subjective component of a conditions of confinement claim requires proof that the official was deliberately indifferent to the deprivations of the inmate's need.  *Wilson v. Seiter*, 501 U.S. at 303.

Plaintiff has not plead or proved the elements necessary to establish an Eighth Amendment claim against the Defendants.  Therefore, the Court recommends that his Eighth Amendment claim be dismissed.

### f.    Equal Protection.

Plaintiff contends that his right to equal protection was violated when Defendant Cushman provided testimony against Plaintiff at the parole revocation hearing.  (Docket no. 27 at 2).  He also alleges that other registered sex offenders at PRRTS were allowed to venture out of the facility unescorted while he was not.  (Docket no. 20 at 4).

"The Equal Protection Clause provides that 'all persons similarly situated should be treated alike.' " *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir.1999) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)).  To prevail on a section 1983 claim for violation of equal protection, Plaintiff must establish that he was intentionally discriminated against because of membership in a protected class.  *Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 426 (6th Cir.2002).

19

Prisoners are not members of a protected class for Equal Protection purposes. *See Hampton v.*
*Hobbs*, 106 F.3d 1281, 1286 (6th Cir.1997). Convicted sex offenders are likewise not a protected
class for purposes of the Equal Protection Clause. *Cutshall v. Sundquist*, 193 F.3d at 482.
Consequently, to prevail on his claim Plaintiff must allege and prove that some classification he was
subjected to was not rationally related to a legitimate government interest. *Id.*

According to the Pine Rest Client Handbook, a resident's privileges are determined by what
phase of the program he has achieved. (Docket no. 24, Ex. 4). The Handbook provides that CSC
clients are not allowed phase 3 privileges off campus at any time without supervision. (Docket no.
24, Ex. 4 at 15). Residents must be admitted to the facility for at least 45 days before attaining phase
3 privileges. (Docket no. 24, Ex. 4 at 15). MDOC clients are permitted to seek employment in the
community only within their last two weeks of treatment. (Docket no. 24, Ex. 4 at 15).
Additionally, MDOC clients must be in their final two weeks of treatment in order to qualify for an
eight hour pass. (Docket no. 24, Ex. 3, 5).

Although Plaintiff repeatedly asked permission to leave the facility unescorted on an eight
hour pass, and to job seek, attend church, and visit the federal courthouse, it is clear that he was not
eligible to leave the facility unsupervised under the Defendants' policies. The Defendants
unquestionably have legitimate government interests in restricting the ability of MDOC and CSC
offenders to roam the community unsupervised. Plaintiff has failed to show that the Defendants
lacked a rational basis for restricting his off campus activities. Therefore, Plaintiff's Equal
Protection claim should be dismissed.

g.    **Due Process**

Plaintiff alleges that the Defendants violated his rights under the Due Process Clause of the

Fourteenth Amendment.  Plaintiff alleges that his rights to due process were violated when Defendant Hamilton provided false testimony against him at his preliminary parole hearing and Defendant Cushman testified against him at the parole revocation hearing.  (Docket no. 1 at 9; Docket no. 27 at 2).  He further argues that Defendant Hamilton denied him his right to counsel at his preliminary parole hearing, and withheld documents used against him at his parole revocation hearing.  (Docket no. 20 at 5).

Individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections.  *Morrissey v. Brewer*, 408 U.S. 471 (1972).  There are two stages in the parole revocation process-the preliminary hearing and the revocation hearing.  *Id.* at 485.  At the preliminary stage, the parolee is entitled to a prompt hearing to determine whether probable cause exists to hold the parolee for a revocation hearing.  *Id*. at 485-87.  If probable cause is established, the parolee has a right to a parole revocation hearing.  *Id.* at 487-88.  The minimal due process requirements at the revocation hearing stage include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

To the extent the Plaintiff seeks to attack the decision made at the parole revocation hearing, Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See also Edwards v. Balisok*, 520 U.S. 641 (1997) and *Davis v. McGinnis*, No. 98-1224, 1999 WL 313857, at *1 (6th Cir. May 5, 1999) (extending the principles espoused in *Heck* to bar section 1983 actions for declaratory relief

and to actions challenging state parole revocation proceedings). Furthermore, Defendants Hamilton and Cushman are entitled to absolute immunity for testimony they provided at the preliminary and parole revocation hearing. *Spurlock v. Satterfield*, 167 F.3d at 1001 ("[W]itnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."); *Oakes v. Mayer*, No. 1:05-cv-356, 2005 WL 2810692, at *2 (W.D. Mich. Oct. 27, 2005) (extending *Spurlock* to parole revocation hearings). Accordingly, insofar as Plaintiff seeks relief because Defendants Hamilton and Cushman testified, falsely or otherwise, at his parole hearings, Plaintiff's claims fail.

Next, Plaintiff alleges that Defendant Hamilton denied him his right to counsel at the preliminary parole hearing. The parole violation report confirms that Plaintiff's request for attorney representation at his preliminary parole hearing was denied. (Docket no. 1, Ex. 5 at 3). It is well settled that while a parolee may be entitled to the assistance of counsel at his final parole revocation hearing, he is not entitled to attorney representation at the preliminary parole hearing. *Merlino v. Michigan Dep't of Corr.*, No. 05-73608, 2006 WL 176422, at *2 (E.D. Mich. Jan. 24, 2006); Mich. Comp. Laws §§ 791.239a and 791.240a. Plaintiff has not alleged or demonstrated that he requested and was denied the assistance of counsel at his final parole revocation hearing. Therefore, his due process claims related to the denial of assistance of counsel should be dismissed.

Finally, Plaintiff alleges that Defendant Hamilton withheld documents used against Plaintiff at his parole revocation hearing. A parolee is entitled to disclosure of the evidence against him at the parole revocation stage. Mich. Comp. Law § 791.240a. Plaintiff has not alleged or shown that it was Defendant Hamilton's responsibility to disclose to him the evidence against him. Even if it was Defendant Hamilton's responsibility, however, parole officers are entitled to quasi-judicial immunity from liability for actions taken in connection with their official duties as parole officers

22

when those actions are judicial in nature. *Imbler v. Pachtman*, 424 U.S. 409 (1976). Thus, Defendant Hamilton is immune from liability for official actions she took in connection with Plaintiff's parole revocation hearing. Plaintiff's due process claims against Defendant Hamilton should be dismissed on the basis of quasi-judicial immunity.

**6.    Conclusion**

Based on the foregoing discussion, this Court recommends that Defendants' Motion for Summary Judgment (docket no. 17) be granted in part and Defendants MDOC and Caruso be dismissed from this action. The Court further recommends that the Defendants' Joinder in the Motion for Summary Judgment (docket no. 24) be granted in part and Defendant Cushman be dismissed from this action. For the reasons stated above, the Court recommends that Plaintiff be permitted to proceed against Defendants Hamilton, Pine Rest Residential Treatment Services, and Pine Rest Christian Mental Health Services on Plaintiff's Establishment Clause claim. All other claims against Defendant Hamilton and the Pine Rest Defendants should be dismissed.

**III.    NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 13, 2010                           s/ Mona K. Majzoub                                   
                                                  MONA K. MAJZOUB
                                                  UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Kenneth Duane Goodwin and Counsel of record on this date.


Dated: January 13, 2010                           s/ Lisa C. Bartlett        
                                                  Case Manager